```
          IN THE UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEBRASKA

IN THE MATTER OF:                )
                                 )
     M&S GRADING, INC.,          )
                                 )
               Debtor.           )
_____)
CONTRACTORS, LABORERS,           )
TEAMSTERS AND ENGINEERS HEALTH   )
& WELFARE PLAN, CONTRACTORS,     )
LABORERS, TEAMSTERS AND          )
ENGINEERS PENSION PLAN, DEAN     )
HIGHTREE, KIM QUICK, TOM         )
MERKSICK, CALVIN G. NEGUS,       )
VIC J. LECHTENBERG and EUGENE    )
LEA, TRUSTEES,                   )
                                 )
               Appellants,       )        8:07CV196
                                 )        8:07CV243
          v.                     )
                                 )
M&S GRADING, INC.,               )
                                 )
               Appellee.         )
_____)
DEAN HIGHTREE, KIM QUICK, TOM    )
MERKSICK, CALVIN G. NEGUS,       )
VIC J. LECHTENBERG AND EUGENE    )
LEA, TRUSTEES, THE               )
CONTRACTORS, LABORERS,           )
TEAMSTERS AND ENGINEERS HEALTH   )
AND WELFARE PLAN, THE            )
CONTRACTORS, LABORERS,           )
TEAMSTERS & ENGINEERS PENSION    )
PLAN,                            )
                                 )
               Appellants,       )        8:07CV208
                                 )
          v.                     )
                                 )
FIRST NATIONAL BANK OF OMAHA     )    MEMORANDUM OPINION
and JAMES KILLIPS, TRUSTEE FOR   )
DEBTOR M&S GRADING, INC.,        )
                                 )
               Appellees.        )
_____)
```

Introduction

This matter is before the Court on the appellants' Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan, the Contractors, Laborers, Teamsters and Engineers Pension Plan, and the following trustees for the foregoing plans:  Dean Hightree, Kim Quick, Tom Merksick, Calvin G. Negus, Vic J. Lechtenberg and Eugene Lea (collectively, the "Plans") appeal of (1) the orders of the bankruptcy court granting summary judgment in favor of First National Bank of Omaha ("FNBO") (Bankr. Case No. 05-8071, Filing No. 58) and James Killips, trustee for debtor M&S Grading (Bankr. Case No. 05-8071, Filing No. 64) and entry of judgment thereon (Bankr. Case No. 05-8071, Filing No. 65) (Case No. 8:07CV208); (2) the order of the bankruptcy court denying the Plans' motion to commence litigation against FNBO as the trustee (Bankr. Case No. 02-81632, Filing No. 785) (Case No. 8:07CV196); and (3) the order of the bankruptcy court denying their motion to remove the trustee (Bankr. Case No. 02-81632, Filing No. 802) (Case No. 8:07CV243).  On September 4, 2007, this Court ordered these appeals consolidated under Case No. 8:07CV196 (Case No. 8:07CV196, Filing No. 15) and will now affirm.

Jurisdiction

This Court has jurisdiction over appeals from final judgments of the bankruptcy court pursuant to 28 U.S.C. § 158(a).

Standard of Review

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and

reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error."  *In re Falcon Products, Inc.*, 497 F.3d 838, 840-41 (8th Cir. 2007); *see also* Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").  This Court may affirm, reverse, or modify the bankruptcy court's ruling or remand the case for further proceedings.  Fed. R. Bankr. P. 8013.

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c); *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 999 (8th Cir. 2003).  When making this determination, the Court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, the Court must "determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A court considering a motion for summary judgment must "look to the substantive law to determine whether an element is essential to a case, and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Dulany v.*

*Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).  In addition, Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  Thus, a nonmoving party must identify specific facts, supported by affidavits or other proper evidence, demonstrating that a genuine issue exists for trial.  *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998).

Whether to allow a party to sue derivatively as the trustee, if permissible at all, is a matter of equity within the discretion of the bankruptcy court.  *See In re Olsen*, 161 B.R. 45, 46 (D. Neb. 1992) (holding that equitable determinations are reviewed for abuse of discretion) (*aff'd U.S. v. Olson*, 4 F.3d 562 (8th Cir. 1993).  Similarly, whether to remove a trustee or not is committed to the court's discretion.  *In re Miller*, 302 B.R. 705, 708 (10th Cir. BAP 2003).  "Matters committed to the bankruptcy court's discretion will be reversed only if the court has abused its discretion."  *In re Harbaugh*, 301 B.R. 317, 319 (8th Cir. BAP 2003).  "An abuse of discretion may only be found if the trial court's judgment was based upon clearly erroneous

-4-

factual findings or erroneous legal conclusions." *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 642 (8th Cir. BAP 2003).

### Background

This case arises out of the bankruptcy of M&S Grading, Inc. ("Debtor"). The Plans are a multi-employer health and welfare plan and multi-employer pension plan, providing benefits to employees involved in the construction trade. The Debtor was a participating employer in these plans. Debtor filed for Chapter 11 bankruptcy on May 20, 2002, and during its attempt to reorganize was twice ordered by the bankruptcy court to make timely contribution payments to the Plans. (*See* Bankr. Case No. 02-81632, Filing Nos. 65, 516.) Debtor's attempt to reorganize failed and on June 13, 2005, Debtor entered into Chapter 7 liquidation. (*See* Bankr. Case No. 02-81632, Filing No. 616.) Despite the bankruptcy court's orders to pay the Plans, at the time of the Chapter 7 filing, the Debtor owed the Plans $117,500 in contribution payments and potentially an unspecified amount of interest and liquidated damages under the Employees Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

Prior to Debtor's filing for bankruptcy, the First National Bank of Omaha ("FNBO") had made several loans to Debtor, a related entity named Earl Brice Equipment L.L.C. ("Earl Brice") and Debtor's officers Billy Liechti and Spencer McGruder, pursuant to a series of promissory notes and guarantee agreements. (Bankr. Case No. 05-08071, Filing No. 44, Brummond

Aff. ¶¶ 5-9.)  When the bankruptcy was filed, FNBO alleged that Debtor's secured debt to it amounted to $7,736,837.79.  (*Id*. at ¶ 10.)  However, Appellants state in their brief that Debtor's principal debt was only $1.593 million.  (Appellant's Br. at 3.)

**Discussion**

Summary Judgment in Favor of FNBO

In Case No. 8:07CV208, the Plans argue that there are issues of material fact related to: (1) the amount of the Debtor's accounts receivable actually collected; (2) how FNBO applied those amounts to the Debtor's primary debt and the debts of other debtors, and (3) whether the payments owed to the Plans were employer or employee contributions for the purposes of ERISA.  (Appellant's Br. at 3, 8-18.)

The amount of accounts receivable actually collected by FNBO, provided it is less than was owed under the security agreements, is irrelevant to a determination of whether FNBO or Trustee Killips has any liability to the Plans.  There is no evidence that FNBO collected more than it was owed under its security agreement.  In fact, the only evidence shows otherwise. (Bankr. Case No. 05-08071, Filing No. 44, Brummond Aff. at 6 (showing the principal balance at $3,068,183.85 as of December 4, 2006).)  Consequently, there is no issue of fact related to the actual collection of receivables, and even if there was, such an issue would not be material.  This argument cannot prevent summary judgment.

How FNBO applied the amounts collected among debts owed it by Debtor, Earl Brice, Billy Liechti, Spencer McGruder, or anyone else for that matter is also irrelevant to a determination of whether FNBO or Trustee Killips has any liability to the Plans.  The only evidence before the bankruptcy court on this issue was that Debtor was liable for the debts of the other debtors and that the other debtors owed large debts to FNBO.  For example, among the promissory notes is one of Earl Brice for $6,360,000 (Bankr. Case No. 05-08071, Filing No. 44, Brummond Aff. at Ex. H) and among the guarantee agreements is one in which M&S Grading guarantees Earl Brice's debts (*Id*. at Ex. F).  The Plans state that they "do not dispute that FNBO had a security interest in the Debtor's accounts receivable" but then state that there are issues of fact regarding how the receivables were applied because they were never provided that information.  (Appellant's Br. at 3.)  How FNBO applied the monies it collected could only be relevant if the Debtor was potentially not liable for the debts of Earl Brice or the other debtors.  However, the only evidence on that issue is that Debtor was liable for the debts of all the other debtors.  (Bankr. Case No. 05-08071, Filing No. 44, Brummond Aff. at Exs. F, I, K.)  Therefore, even if FNBO somehow misapplied the money it collected, there would still be no issue of material fact related to FNBO's potential liability to the Plans.

The Plans' best argument is that the money they are owed might be employee contributions to an ERISA plan.  If it is,

then the Plans should have been paid before the bankruptcy estate because the employee contributions would never have become part of the Debtor's assets.  The Plans cite several cases for the proposition that amounts deducted from employees' wages and withheld from their paychecks are "employee" contributions.  *See, e.g.*, *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 221-22 (4th Cir. 2005); *Bannister v. Ullman*, 287 F.3d 394, 402 (5th Cir. 2002); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  A review of the pay stubs, however, establishes that the Plans' contributions were not deducted from the employees' paychecks.  (*See* Bankr. Case No. 05-08060, Filing Nos. 35, 36, 37, 132.)

The Plans argue that despite the lack of a deduction on the pay stubs, it is not clear whether the amounts owed to them are employer or employee contributions within the meaning of ERISA and that as a result there is a material issue of fact which precludes summary judgment.  In particular, the Plans point to language in the Collective Bargaining Agreement ("CBA") between the Debtor and the Plans which states that "[a]ny difference in contributions will be added to or deducted from the employees wages."  (Bankr. Case No. 02-81632, Filing No. 65, Decl. of Barbara Mantz, Ex. A at 14-15; Ex. A-2 at 13; Ex. B at 18; Ex. B-2 at 16.)  FNBO disputes the meaning of the CBA.  (*See, e.g.*, Appellee's Br. at 8.)  This disagreement is a factual dispute, but it is not material.  Regardless of the construction of the CBA, it is an agreement between the Debtor and the Plans to conduct business in certain ways.  What is relevant to the

question of whether contributions are employer or employee contributions is what actually happened, not mere intentions. Here, the only evidence of what actually happened shows that the contributions were employer contributions.  (*See, e.g.*, Bankr. Case No. 05-08060, Filing Nos. 35, 36, 37, 132; Bankr. Case No. 05-08070, Filing No. 87, Liechti Aff. at ¶¶ 4, 5; Bankr. Case No. 05-08071, Filing No. 43, McGruder Dep. at 32:24-33:10.)  Thus, the meaning of the CBA is not a material issue of fact and cannot preclude summary judgment.

      Next, the Plans argue that the bankruptcy court improperly weighed the evidence in determining there was no material issue of fact on the deduction issue when it ignored Janeen Kruse's deposition testimony "that contributions to the Plans were deducted from the employees' wages and withheld from the paychecks of the Debtor's employees."  (Appellant's Br. at 5; *see* Bankr. Case No. 02-81632, Filing No. 68, Decl. of David J. Selby, Ex. E, Depo. of Janeen Kruse 6:23-24, 14:15-15:14; 21:5-22.)  But that is not what happened here.  A review of Ms. Kruse's deposition reveals that she was discussing the mechanics of what she did as a bookkeeper when the union adjusted the contribution rate.  In this context, her clear intent was to use the word "deduct" to mean reducing the rate of pay to keep employees' gross compensation the same when the union adjusted the level of contribution.  Ms. Kruse clearly did not use the word in the sense urged by the Plans.  Her statement is thus not enough to create a material issue of fact which precludes summary

-9-

judgment.  Therefore the monies owed the Plans are employer contributions, which remain the property of the employer until they are actually paid to the Plan.  *See In re College Bound, Inc.*, 172 B.R. 399, 403 (Bankr. S.D. Fla. 1994) (holding that a plan "has no rights to the contributions until they are actually paid.").  It follows that the bankruptcy court did not err in holding that there is no genuine issue of material fact here and that FNBO was entitled to judgment as a matter of law.  Inasmuch as the Plans' argument that summary judgment was improperly granted to Trustee Killips relies on him improperly transferring funds to FNBO, it is now clear that ruling should also be affirmed.  Accordingly, this Court will affirm the bankruptcy court's grants of summary judgment in favor of both FNBO and Killips.

### Denial of Motion to Commence Litigation

Case No. 8:07CV196 is the Plans' appeal of the bankruptcy court's denial of their motion to commence litigation.  Only trustees or debtors-in-possession may sue under 11 U.S.C. § 506(c) to recover administrative expenses from property subject to a security interest.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000).  However, in *Hartford*, the Supreme Court declined to consider whether a court could grant a party the right to sue derivatively as the trustee.  *Id.* at 13 n.5.  Acting on an assumption that a court may grant such a right, the Plans appeal from the bankruptcy court's denial of their motion to proceed derivatively as the trustee against FNBO.

-10-

The Plans challenge several of the bankruptcy court's factual findings as lacking evidence and are therefore clearly erroneous. They first attack the finding that Trustee Killips properly evaluated the relevant factors set forth in case law to determine whether any action against FNBO was warranted. Those factors are that the trustee weigh the merits of any litigation, the likelihood of success, the cost, and the net benefit to the debtor's estate. *In re Cassis*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998). A review of the record reveals sufficient evidence that the trustee reviewed these factors to support the bankruptcy court's judgment.

Next, the Plans argue that it was clearly erroneous for the bankruptcy court to find that Killips exercised "sound business judgment" when he concluded that any litigation against FNBO would likely be unsuccessful. (Case No. 8:07CV196, Appellant's Br. at 10.) Although it is not necessary for a trustee to be correct in order to exercise sound business judgment, the Court notes that the foregoing analysis of the summary judgment entered in favor of FNBO and Trustee Killips is consistent with the trustee's opinion that the merits and likelihood of success of litigation against FNBO were low and that the costs were accordingly too high to justify the possible net benefit to Debtor's estate. Trustee Killips also relied on the advice of counsel in making his decision. It was not clearly erroneous for the bankruptcy court to find that Killips used sound business judgment.

The Plans also contend that it was clear error for the court to rely on other parties in making the above determinations.  While it may have been clearly erroneous if the court and the trustee had relied solely on FNBO for an objective party's opinion, the bankruptcy court also notes that the IRS, which "holds a large priority claim and would receive the bulk of any recovery by the estate, has reached the same conclusion."  (Bankr. Case No. 02-81632, Filing No. 785, at 1 ¶ 4.)  There was no error in the bankruptcy court's reliance on the objective opinions of other parties.

Finally, the Plans argue that the bankruptcy court erred in not applying the doctrine of equitable subordination in this case.  Equitable determinations are committed to the trial court's discretion and are reviewed for an abuse of that discretion.  *Matter of Olsen*, 161 B.R. 45, 46 (D. Neb. 1992) (aff'd, *U.S. v. Olsen*, 4 F.3d 562 (8th Cir. 1993)).  A review of the record reveals no clearly erroneous factfinding and no erroneous legal conclusions.  Therefore, there was no abuse of discretion in the bankruptcy court's decision not to apply the doctrine of equitable subordination.  Having found no error, the Court concludes that the judgment in this case should be affirmed.

Denial of Motion to Remove Trustee

Finally, in Case No. 8:07CV243, the Plans appeal the bankruptcy court's denial of their motion to remove the trustee.  (Bankr. Case No. 02-81632, Filing No. 802.)  As previously

mentioned, whether or not a trustee should be removed is committed to the discretion of the bankruptcy court.  *In re Miller*, 302 B.R. 705, 708 (10th Cir. BAP 2003).  The Plans argue that the bankruptcy court must hold a hearing prior to denying a motion to remove a trustee.  However, the statute states simply that the court "after notice and hearing, may remove a trustee . . . for cause."  11 U.S.C. § 324.  The statute clearly requires a hearing for the trustee to be removed, but not for a motion to remove the trustee to be denied.  The bankruptcy court made no error of law in choosing not to hold a hearing, and the Plans point to no factual error.  Therefore, there was no abuse of discretion and the judgment in this case should also be affirmed.

## CONCLUSION

For the foregoing reasons, the judgments of the bankruptcy court will be affirmed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 28th day of November, 2007.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court